FILED

Nov 12  4 00 PM '03

U. S. _____ _____ _____
KEN _____ _____ _____

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| ENRICO DiPASQUALE d/b/a ) <br> WESTPORT CHEMICAL COMPANY, ) <br> Plaintiff, ) <br> v. ) <br> GEORGIA GULF CORPORATION, ) <br> Defendant. ) | Civil Action No. 303 CV 0013 PCD <br><br> November 12, 2003 |

**SECTION C**
**DEFENDANT'S RESPONSE TO**
**PLAINTIFF'S TRIAL PREPARATION COMPLIANCE**

Plaintiff, Enrico DiPasquale, d/b/a Westport Chemical Corporation by and through his undersigned counsel, sets forth the following in compliance with the Section A. requirements of the Court's Trial Preparation Order:

C.1.    Claims of fact proposed for stipulation as undisputed

A.    Plaintiff Enrico DiPasquale (hereinafter referred to as "Plaintiff" or "Mr. DiPasquale"), is an individual doing business as Westport Chemical Corporation, a sole proprietorship, with a principal place of business located in Norwalk, Connecticut.

**Agree.**


B.    At all times relevant hereto, Plaintiff has been a resident and citizen of the State of Connecticut.

**Unknown.  Defendant cannot agree or disagree**.


C.    At all times relevant hereto, Defendant is and was a Delaware corporation with its principal place of business located in the State of Georgia.

**Agree.  All times since December 30, 1991, defendant was a Delaware corporation with a principal place of business in the State of Georgia.**

1

---

D.    Plaintiff is in the business of buying and re-selling certain chemical products, including Liquid Caustic Soda, 50% solution (diaphragm grade) (hereinafter referred to as the "Product").

**Agree.**

E.    Defendant supplied the Product to Mr. DiPasquale since Defendant's inception in or around 1984 pursuant to oral and written agreements.

**Disagree.  The only period relevant to this case is December 30, 1991 through June, 2001.  Defendant supplied product to Westport Chemical Company.**

F.    Defendant knew that Plaintiff was purchasing the Product for re-sale purposes.

**Agree.**

G.    Plaintiff previously had a similar business relationship for several years with Georgia Gulf's former parent company, Georgia Pacific Corporation.

**Unknown.  Defendant cannot agree or disagree.  Relationship to Georgia Pacific is irrelevant.**

H.    The parties had enjoyed an excellent business relationship.

**Disagree.  Westport Chemical Company was chronically behind in its payment of invoices.  This was troublesome to Georgia Gulf. Testimony:  Countering evidence from Bruce A. Smith; Account Manager, Georgia Gulf; Jerry Bradford, Credit Manager, Georgia Gulf; Cal Barvis; former Sales Manager, Georgia Gulf.**

I.    In or about December 30, 1991, the parties entered into a written agreement (the "Contract") pursuant to which Georgia Gulf agreed to supply, and Mr. DiPasquale agreed to purchase the Product.

**Agree.  However, agreement was with Westport Chemical Company.**

J.    The Contract set forth, <u>inter</u> alia, certain minimum and maximum quantities and payment terms for the Product to be purchased.

**Agree.**

K.      Pursuant to the Contract, Plaintiff was to pay a specified price "less 5% resale allowance."

**Agree.**

L.    Prior to 2001, Plaintiff received notifications of price changes for the Product on a regular basis.

**Agree.**

M.    Prior to 2001, Defendant did not limit the quantity of Product that Plaintiff could purchase in a calendar year, and Plaintiff routinely ordered quantities of Product well in excess of the 250 dry short tons "maximum" set forth in the Contract.

**Disagree.  The contract allows for orders in excess of maximum set forth in contract "at Sellers option."  Georgia Gulf may have, on occasion allowed plaintiff to purchase in excess of contract maximum.  Testimony, Bruce A. Smith, Cal Barwis.**

N.    By its terms, the Contract automatically renewed on an annual basis unless terminated by one of the parties in accordance with the terms set forth in the Contract.

**Agree.**

O.    Plaintiff routinely ordered Product, and paid for such Product in periodic installments.

3

**Disagree. Periodic installments do not convey the essence of the transaction which is that plaintiff paid only when threatened with stoppage of further shipments and cancellation of contract. Testimony, Jerry Bradford, Bruce A. Smith, Cal Barwis**

P.    Plaintiff ordinarily did not pay for such Product on a "net 30 days" basis as stated in the invoices tendered by Georgia Gulf and in the Contract.

**Agree. Plaintiff was usually late in paying.**

Q.    Prior to 2001, Defendant did not take any action against Plaintiff with respect to the timeliness of his payments.

**Disagree. Georgia Gulf would threaten to cease shipment unless payment received. Testimony, Cal Barwis; Jerry Bradford; Bruce A. Smith.**

R.    Defendant periodically communicated with Plaintiff to request payment selected invoices, and the parties would reach agreement as to reasonable payment arrangements.

**Agree. Except with regard to word "reasonable". Reasonable payment arrangements were spelled out in the contract and on invoices. Testimony, Jerry Bradford.**

S.    Throughout the parties' relationship, Plaintiff placed orders for Defendant's Product from his home office in Connecticut, and all correspondence and other communications initiated by Defendant were directed to Plaintiff in Connecticut.

**Disagree.**

T.    Defendant's representatives made numerous sales calls to Plaintiff in Connecticut.

4

Disagree.

U.    In 2001, Defendant refused to accept further Product orders from Plaintiff.

**Agree. Defendant had not paid his outstanding balance of $20,394.77 and would make no arrangements for payment, therefore, defendant exercised its right to terminate the contract and refused to ship further product to plaintiff.**

V.    Following Plaintiff's objection, Defendant subsequently agreed to accept further orders, provided that Mr. DiPasquale satisfied certain conditions.

**Agree. After plaintiff wrote to Georgia Gulf's president, Georgia Gulf agreed to continue to supply product to plaintiff for the remainder of 2001 limited to contractual quantities provided only if plaintiff paid its outstanding balance and kept current in payments. The plaintiff refused to comply.**

W.    In addition, Defendant advised Mr. DiPasquale that Defendant would be terminating the Contract as of December 31, 2001.

**Agree.**

X.    In 2001, Defendant failed to send to Defendant price lists or other Product literature.

**Disagree.**

Y.    Defendant's actions were performed in the conduct of trade, business or commerce.

**Agree.**

C.2.    Proposed findings of fact, with a specification of each witness, document, pleading

and/or tangible physical evidence on which such finding could be premised. Such proposed findings, with the claims of fact (1 above), shall constitute the proof on which the claims of relief are premised.

      A.    Plaintiff Enrico DiPasquale is an individual doing business as Westport Chemical Corporation, a sole proprietorship, with a principal place of business located in Norwalk, Connecticut. (Enrico DiPasquale; Exhibit 1)

      **Agree.**

      B.    At all times relevant hereto, Plaintiff has been a resident and citizen of the State of Connecticut. (Enrico DiPasquale; Exhibit 1)

      **Unknown. Defendant cannot agree or disagree.**

      C.    At all times relevant hereto, Defendant is and was a Delaware corporation with its principal place of business located in the State of Georgia. (Exhibits 1 and 2)

      **Agree.**

      D.    Plaintiff is in the business of distributing certain chemical products, including the Product. (Enrico DiPasquale; Exhibit 1)

      **Agree.**

      E.    Defendant supplied Product to Mr. DiPasquale since Defendant's inception in or around 1984 pursuant to oral and written agreements. (Enrico DiPasquale; Exhibits 1 and 3)

      **Disagree. Georgia Gulf was not in business prior to 1985. Testimony, Cal Barwis.**

      F.    Plaintiff was a distributor of Defendant's Product. (Enrico DiPasquale; Exhibits 1 and 10)

**Disagree. Testimony, Cal Burwis, Jerry Bradford, Bruce A. Smith.**

G.    Plaintiff purchased Defendant's Product for distribution to his customers. Such fact was known to Defendant. (Enrico DiPasquale; Exhibits 1 and 3)

**Agree.**

H.    Plaintiff previously had a similar business relationship for several years with Georgia Gulf's former parent company, Georgia Pacific Corporation. (Enrico DiPasquale; Exhibit 1)

**Unknown. Defendant cannot agree or disagree. This is irrelevant.**

I.    Prior to the incident giving rise to this lawsuit, the parties had enjoyed an excellent business relationship. (Enrico DiPasquale)

**Disagree. Plaintiff was constantly late in paying invoices. This was troublesome to Georgia Gulf. Testimony, Cal Barwis; Jerry Bradford.**

J.    The parties entered into the Contract pursuant to which Georgia Gulf agreed to supply, and Mr. DiPasquale agreed to purchase liquid caustic soda. (Enrico DiPasquale; Exhibits 1 and 3)

**Agree. Agreement dated December 30, 1991.**

K.    The Contract set forth certain quantities and payment terms for the Product to be purchased. (Enrico DiPasquale; Exhibits 1 and 3)

**Agree.**

L.    Pursuant to the Contract, Plaintiff was to pay a specified price "less 5% resale allowance." (Enrico DiPasquale; Exhibit 3)

**Agree.**

7

M.    Prior to 2001, Plaintiff received notifications of price changes for the Product on a regular basis. (Enrico DiPasquale; Exhibit 5)

**Agree.**

N.    Prior to 2001, Defendant did not impose limits on the amount of the Product that Plaintiff could purchase in any one calendar year, and Plaintiff routinely ordered and Defendant routinely delivered quantities in excess of the limit set forth in the Contract. (Enrico DiPasquale; Exhibits 6 and 13)

**Disagree. Limits were imposed periodically and were often lifted at defendant's option. Testimony, Bruce A. Smith; Cal Barwis.**

O.    By its terms, the Contract automatically renewed on an annual basis unless terminated by one of the parties in accordance with the terms set forth in the Contract. (Enrico DiPasquale; Exhibits 1 and 3)

**Agree.**

P.    Plaintiff routinely ordered Product, and paid for such Product in periodic installments. (Enrico DiPasquale; Exhibits 1 and 6)

**Disagree. Payments were usually made only after demand for payment was made and plaintiff told no further shipments would be made. This was not a satisfactory routine. Testimony, Cal Barwis; Jerry Bradford; Bruce A. Smith.**

Q.    Plaintiff ordinarily did not pay for such Product on a "net 30 days" basis as stated in the invoices tendered by Georgia Gulf and in the Contract. (Enrico DiPasquale; Exhibits 1, 3 and 6)

**Agree. Plaintiff was usually delinquent in paying the defendant.**

8

R.    Prior to 2001, Defendant did not take any action against Plaintiff with respect to the timeliness of his payments. (Enrico DiPasquale; Exhibits 1 and 6)

**Disagree. Plaintiff was refused shipment until he paid. Testimony, Cal Barwis; Bruce A. Smith; Jerry Bradford.**

S.    Defendant periodically communicated with Plaintiff to request payment of selected invoices, and the parties would reach agreement as to reasonable payment arrangements. (Enrico DiPasquale; Exhibits 1 and 6)

**Disagree. Payment arrangements beyond 30 days from invoice date were not reasonable to Georgia Gulf. Testimony, Jerry Bradford.**

T.    Throughout the parties' relationship, Plaintiff placed orders for Defendant's Product from his home office in Connecticut, and all correspondence and other communications initiated by Defendant were directed to Plaintiff in Connecticut. (Enrico DiPasquale; Exhibit s 1 and 2)
**Disagree.**

U.    Defendant's representatives made numerous sales calls to Plaintiff in Connecticut. (Enrico DiPasquale; Exhibits 1 and 2)

**Agree.**

V.    In 2001, Defendant refused to accept further Product orders from Plaintiff. (Enrico DiPasquale; Exhibits 1, 9 and 11)

**Disagree. Georgia Gulf agreed to ship product if plaintiff became current in his outstanding bills. He never became current, therefore, no further shipments were sent to him. Testimony, Jerry Bradford; Bruce A. Smith; Cal Barwis.**

W.    Following Plaintiff's objection, Defendant subsequently offered to accept further orders, provided that Mr. DiPasquale satisfied certain conditions at variance with the parties' prior business arrangements. (Enrico DiPasquale; Exhibits 9-12)

9

**Disagree.   Conditions were in accordance with prior business arrangements in the contract between the parties. Testimony, Jerry Bradford; Bruce A. Smith; Cal Barwis**.

X.   In 2001, Defendant for the first time attempted to enforce limitations on the quantity of Product that Plaintiff could purchase. (Enrico

DiPasquale; Exhibits 10 and 12)

**Disagree.   Limitations were always imposed and occasionally lifted.   Limitations are irrelevant to issues in this action.   Testimony, Cal Barwis; Jerry Bradford; Bruce A. Smith**.

Y.   In addition, Defendant advised Mr. DiPasquale that Defendant would be terminating the Contract as of December 31, 2001. (Enrico DiPasquale; Exhibits 10 and 12)

**Agree.**

Z.   Defendant failed to send to Plaintiff price lists or other Product literature after December 2000. (Enrico DiPasquale; Exhibits 1 and 5)

**Disagree.   The defendant was not required to send this information to plaintiff.   This issue is beyond scope of complaint and is irrelevant.**

AA. Throughout the parties' relationship, a course of dealing developed with respect to Plaintiff's manner of payment for Product he purchased from Defendant. (Enrico DiPasquale; Exhibit 1 and 6)

**Disagree.**

BB. Defendant's refusal to permit Plaintiff to continue to order Product was not in keeping with the provisions of the parties' Contract, or with the course of dealing between the parties that developed over a period of many years. (Enrico DiPasquale; Exhibits 1 and 6)

**Disagree.**

CC.  Defendant has beached the Contract. (Enrico DiPasquale; Exhibits 9-12)

**Disagree.**

DD.  Mr. DiPasquale has suffered injury to his business, including, but not limited to, lost profits. (Enrico DiPasquale; Exhibits 14 and 15)

**Defendant has insufficient knowledge and therefore cannot agree or disagree.  If plaintiff suffered injury to his business, it was as a result of his breach of contract with the defendant  and his own actions.**

EE.    Following Defendant's breach of the Contract, Plaintiff has been deprived of a secure and reliable source of Product for distribution to his customers. (Enrico DiPasquale)

**Disagree.  Defendant did not breach contract.  Had plaintiff paid his obligations to defendant  he would not have been deprived of this reliable source of product.  Testimony,  Jerry Bradford; Bruce A. Smith; Cal Barwis.**

FF.    Plaintiff has not been able to secure the five percent (5%) resale allowance that he had received as a distributor for Georgia Gulf. (Enrico DiPasquale; Exhibit 14)

**Disagree.  Had plaintiff paid his obligations under contract, he would have a continuing relationship with defendant.  Defendant disagrees that this, if true, is its fault.  Testimony,  Jerry Bradford; Bruce A. Smith; Cal Barwis.**

GG.  Defendant knew that Plaintiff relied on Defendant for his supply of chemical products pursuant to the custom and usage that had

11

developed over the course of the many years of their business relationship.
(Enrico DiPasquale; Exhibits 4 and 9-12)

**Disagree.**

HH. Defendant further knew that if it discontinued supplying
Product to Plaintiff on the same terms pursuant to which they had always done
business, Mr. DiPasquale's business would be damaged. (Enrico DiPasquale;
Exhibits 9-12)

**Disagree.**

II.    By virtue of defendant's refusal to deal with plaintiff in good
faith, and in accordance with the course of dealing that had developed over the
years, Defendant has breached the covenant of good faith and fair dealing.
(Enrico DiPasquale; Exhibits 9-12)

**Disagree. Defendant had no way of knowing if plaintiff had
another supplier. Testimony, Cal Barwis; Bruce A. Smith.**

JJ.    As a result of Defendant's actions, Mr. DiPasquale's business
has suffered actual losses, including, but not limited to, lost profits, arising out
of its inability to secure a reliable, alternate vendor of the Product. (Enrico
DiPasquale; Exhibits 14 and 15)

**Disagree. The plaintiff's acts caused any damage or loss
suffered by plaintiff.**

KK. From its dealings with Plaintiff over the course of nearly
twenty years, Defendant was aware of Plaintiff's need for a continuing, secure
and reliable supply of the Product, and the need for flexible payment
arrangements. (Enrico DiPasquale; Exhibits 6 and 9-12)

12

**Disagree.  The contract of December 30, 1991 defined the respective rights and obligations of the parties.  All other considerations are irrelevant.**

LL.    Defendant's unilateral change in the payment terms it imposed on Plaintiff, and its failure to provide current price lists and Product literature, altered a course of dealing between the parties established over a period of many years. (Enrico DiPasquale; Exhibits 6 and 9-12)

**Disagree.  There was no unilateral change in payment terms.  Failure to provide price lists not relevant to this action.  Testimony, Jerry Bradford; Cal Barwis; Bruce A. Smith.**

MM. Defendant's actions were performed in the conduct of trade, business or commerce. (Enrico DiPasquale; Exhibits 1 and 2)

**Agree.**

NN.    Defendant's actions were undertaken knowingly and intentionally, and were intended to injure Plaintiff and his business. (Enrico DiPasquale; Exhibits 9-12)

**Disagree.**

OO.    Defendant's actions constitute a violation of the Connecticut Unfair Trade Practices Act (C.G.S., Sections 42-110 et se .), in that said actions of the Defendant violated  public policy and were immoral, unethical, oppressive, unscrupulous, deceptive and unfair. (Enrico DiPasquale; Exhibits 9-12)

**Disagree.**

PP.    As a result of Defendant's actions, plaintiff has suffered substantial injury and damage to his business. (Enrico DiPasquale; Exhibits 1, 14 and 15)

**Disagree.  Plaintiff's actions caused his own injury.**

13

QQ. Plaintiff has suffered damages in the amount of $288,337.09

as a result of Defendant's actions. (Enrico DiPasquale; Exhibits 1, 14 and 15)

**Disagree.**


C.3    Claims of law, with the authority on which each claim is premised and organized as they relate to each theory on which relief is sought.

First Claim for Relief

A.    Defendant has breached the Contract with Plaintiff by improperly terminating it, after imposing conditions inconsistent with the parties' course of dealing over a period of many years.

**Disagree.**


B.    Judgment should enter for Plaintiff in an amount to be determined at trial as a result of Defendant's improper termination of the Contract.

**Disagree.**

Second Claim for Relief

A.    Defendant has breached the covenant of good faith and fair dealing by refusing to deal with Plaintiff in accordance with the parties' course of dealing and the custom and usage, that had developed over the course of their business relationship.

**Disagree.**

B.    Judgment should enter for Plaintiff in an amount to be determined at trial as a result of Defendant's breach of the covenant of good

14

faith and fair dealing.

**Disagree.**

Third Claim for Relief

A.     From its dealings with Plaintiff over the course of nearly twenty years, Defendant was aware of Plaintiff's need for a continuing, secure and reliable supply of chemical products, and the need for flexible payment arrangements.

**Disagree.  The needs of the parties are defined by the contract of December 30, 1991.**

B.     Defendant's unilateral change in the payment terms it imposed on Plaintiff, and its failure to provide current price lists and Product literature, altered a course of dealing between the parties established over the course of many years.

**Disagree.  There was no unilateral change.**

C.     Defendant's actions were performed in the conduct of trade, business or commerce.

**Agree.**

D.     Defendant's actions were undertaken knowingly and intentionally, and were intended to injure Plaintiff and his business.

**Disagree.**

E.     Defendant's actions constitute a violation of the Connecticut Unfair Trade Practices Act (C.G.S., Sections 42-110 et sec .), in that said actions of the Defendant violated public policy and were immoral, unethical,

15

oppressive, unscrupulous, deceptive and unfair.

**Disagree.**

F.    As a result of Defendant's actions, plaintiff has suffered substantial injury and damage to his business.

**Disagree.**

G.    Judgment should enter for Plaintiff in the amount of $288,337.09, plus interest.

**Disagree.**

H.    Punitive damages should be awarded to Plaintiff pursuant to Section 42-1 1 0g(a) of the Connecticut General Statutes or as are otherwise permitted by law.

**Disagree.**

I.    Attorneys' fees should be awarded to Plaintiff pursuant to Section 42-110g(d) of the Connecticut General Statutes or as are otherwise permissible under law.

**Disagree.**

J.    Plaintiff should be awarded the costs of this action.

**Disagree.**

C.4    A list of proposed exhibits (plaintiff's numbered - defendant's lettered), including deposition transcripts, with a listing of those pages of each transcript to be offered and on which the proposed findings of fact, if any, are premised.

      1.    Complaint, dated December 31, 2002.

      **Agree.**

      2.    Defendant's Answers and Defenses to Complaint, dated June 17, 2003.

      **Disagree.  Should be Defendant's Answer and Defenses dated June 17, 2003 and Counterclaim dated October 15, 2003.**

      3.    Distributor Contract between Plaintiff and Defendant dated December 31, 1991.

      **Agree.  (However, this is not a Distributor Contract).  Contract is dated December 30, 1991**.

      4.    October 16, 1992 letter from Bruce A. Smith to R. DiPasquale enclosing fully-executed Contract.

      **Agree.**

      5.    Periodic price change letters sent by Defendant to Mr. DiPasquale.

      **Disagree.  These are not relevant**.

      6.  Georgia Gulf Open Invoice statements bearing notations setting forth payment arrangements agreed to by the parties and references to payment methods.

      **Disagree.  Not relevant**.

17

7.    September 9, 1998 letter from Dawn Lozano to Rick DiPasquale.

**Disagree.  Not relevant**.

8.   September 10, 1998 letter from Joan V. Rosa to Enrico DiPasquale.

**Disagree.  Not relevant**.

9.    June 15, 2001 letter from Enrico DiPasquale to Edward A. Schmitt.

**Agree.**

10.    June 20, 2001 letter from Bruce A Smith to Enrico DiPasquale.

**Agree.**

11.    June 29, 2001 letter from Enrico DiPasquale to Bruce A. Smith.

**Agree.**

12.   July 3, 2001 letter from Bruce A. Smith to Enrico DiPasquale.

**Agree.**

13.    Invoices reflecting the quantity of Products ordered from Defendant.

**Relevant only after December 30, 1991**.

14.    Invoices reflecting the quantity of Products ordered from third parties.

**Disagree. Irrelevant.**

15.    Chart setting forth a computation of lost profits through September 30, 2003.

**Disagree.**

C.5        A list of all witnesses expected to be called, with a brief summary of the testimony of each. <u>As to each witness</u>: a statement of the area of expertise, attaching a curriculum vitae, if <u>available: and the opinion to be expressed with a brief summary of the basis for the opinion.</u>

Plaintiff currently expects to call Enrico DiPasquale to testify as to all matters relevant to Plaintiff's case, including the matters set forth above in Sections A. 1, A.2 and A.4.

C.6    A description of each item of proposed evidence, whether testimonial or exhibit form, reciting evidence likely to be disputed or to require a ruling by the court, setting forth the basis <u>and authority on which admissibility premised.</u>

Plaintiff does not expect there to be any disputes regarding the admissibility of Plaintiff's exhibits.

**There will be objections to admission of exhibits and testimony as stated above. Objections will be made regarding relevancy to issues in this action.**

C.7   The basis for federal jurisdiction.

**Diversity of citizenship;     28 U.S.C. Section 1332(a)(1).**

19

C.8    A statement of the nature of each cause of action and the

relief sought.

**The Plaintiff claims that the Defendant breached its agreement with him by refusing to sell him caustic soda; breached its implied agreement of good faith and fair dealing; and violated the Connecticut Unfair Trade Practices Act by depriving him of caustic soda which he sold to third party customers. The Plaintiff seeks money damages.**

**The Defendant claims that the party's agreement of December 30, 1991 controls their obligations to each other and Plaintiff breached that agreement when he refused to pay for product shipped to him at his request. Further the contract between the parties provides that any action arising out of the contract must be commenced within one year from the date the cause of action accrues. This action was commenced after the limitation period. The Defendant, by counterclaim, has asserted its claim for past due payment of $20,394.77 from the Plaintiff.**

C.9    Voir Dire Question:

**Moot.**

C.10    Written statement in lieu of opening statement:

**The Defendant is in the business of selling chemicals including caustic soda on a national basis throughout the United States. The**

20

Plaintiff was a customer. In December 1991 the parties entered into an agreement whereby the Defendant agreed to sell caustic soda to the Plaintiff and the Plaintiff agreed to pay for the product within 30 days.

During the course of their relationship the Plaintiff was usually late in making payments for product ordered. Defendant's account and credit managers had to monitor the Plaintiff's account closely in order to insure that payment was received. Payment from Plaintiff was not usually forthcoming unless he was told that no further shipments would be made on his orders until his account was brought current. Georgia Gulf's credit and account managers became increasingly disturbed with the lateness of payment and the difficulty in securing payment from the Plaintiff.

Finally, in June 1991 the Plaintiff had not paid for orders that Defendant had sent to Plaintiff in February through March, 2001 which totaled approximately twenty one thousand dollars. The Defendant was warned that unless he brought his account current Defendant would refuse to sell him any more product and the contract would terminate as of December 31, 2001. The Plaintiff failed and refused to bring his account balance current or to make arrangements for payment for the product he received. Because of his failure to pay for product shipped to him by the Defendant, the Defendant has refused to ship him any more

**caustic soda and has terminated the contract as of December 31, 2001.**

**The Defendant claims a judgment against the Plaintiff in the amount of**

**$20,394.77.**

11. Jury charges and verdict and/or jury interrogatories: Attached

separately.

THE DEFENDANT

By_____

Benson A. Snaider
Benson A. Snaider, P.C.
Its Attorney
55 Church Street, Suite 403
New Haven, CT 06510
Federal Bar#: ct 07359

<u>CERTIFICATE OF SERVICE</u>

I certify that on November 12, 2003 a copy of the foregoing was served upon the plaintiff by mailing a copy to its attorney of record by first class mail, postage prepaid, at the following address:

William McMorris, Esq.
Slutsky, McMorris & Meehan, LLP
396 Danbury Road, Second Floor
Wilton, CT 06897

Benson A. Snaider

22

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ENRICO DiPASQUALE d/b/a | ) | |
| WESTPORT CHEMICAL COMPANY | ) | |
| | ) | |
| Plaintiff | ) | |
| V. | ) | |
| | ) | CIVIL ACTION NO.3:03CV0013 |
| (PCD) | | |
| GEORGIA GULF CORPORATION | ) | |
| | ) | |
| Defendant | ) | November 12, 2003 |

## DEFENDANT'S REQUESTS TO CHARGE

1.  <u>Corporation as a Party</u>:

You have heard that plaintiff in this lawsuit is a person and the defendant, Georgia Gulf Corporation is a corporation. A corporation is an entity created by the law. All parties are equal before the law.

The mere fact that one of the parties is a natural person and one is a creation of the law should not play any part in your deliberations. Rather, you must assess the claims and defense of all parties without regard to their status and treat all parties in an equal and unbiased fashion

2.  <u>Elements of an Express Contract</u>:

The plaintiff claims that he/she/it entered into a contract with the defendant. A contract is an agreement enforceable at law. Contracts may be express or implied. If the agreement is shown by the direct words of the parties, spoken or written, the contract is an express one.

AUTHORITY

*Boland v. Catalano*, 202 Conn. 333, 338-39 (1987); *Skelly v. Bristol Savings Bank*, 63 Conn. 83, 87 (1893); *Atlas v. Miller*, 20 Conn. App. 680, 683 (1990); *Hale v. Benvenuti, Inc.*, 38 Conn. Sup. 634, 638-39 (1983); 1 Restatement (Second), Contracts §§ 1,4.


3.    Interpret Contract as a Whole

When determining the intent of the parties, you should consider all relevant provisions of the contract. Assume that all language of the contract is necessary, unless this would be unfair or unreasonable.

AUTHORITY

*White v. Kampner,* 229 Conn. 465, 473 (1994); *Barnard v. Barnard*, 214 Conn. 99, 109 (1990); *Lar-Rob Bus Corp. v. Fairfield*, 170 Conn. 397, 407 (1976).


4.    Necessity for Definite Terms:

To be enforceable, an agreement must be definite and certain as to its essential terms and requirements.

AUTHORITY

*Presidential Capital Corp. v. Reale*, 231 Conn. 500, 506-07 (1994); *Dunham v. Dunham*, 204 Conn. 303, 313 (1987); 1 A. Corbin, Contracts (Rev. Ed. 1996) § 4.1, p. 525.


5.    Implied Covenant of Good Faith and Fair Dealing

Every contract contains an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the

other party to receive benefits of the contract. The concept is essentially a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended. It is not a separate contractual claim and the covenant cannot be applied to achieve a result contrary to the clearly expressed terms of the contract between the parties.

Here, the defendant had an obligation to exercise good faith when enforcing the following contract term:

> 11.    Seller may recover for each shipment hereunder as a separate
>        transaction, without reference to any other shipment...

You must decide whether the defendant fulfilled that obligation to exercise good faith.

Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party. Good faith and fair dealing mean an attitude or state of mind denoting honesty of purpose and freedom from intention to defraud. It means being faithful to one's duty and obligation under the contract.

Good faith is defined as the opposite of bad faith. If the defendant] engaged in bad faith you must find that it did not fulfill the covenant. Bad faith generally implies a design to mislead or to deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation not prompted by an honest mistake as to one's rights or duties. Bad faith is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose. Bad faith contemplates a state of mind affirmatively operating with furtive design or ill will.

## AUTHORITY

*Habetz v. Condon*, 224 Conn. 231, 238 (1992); *Eis v. Meyer*, 213 Conn. 29,, 36 (1989); *Warner v. Konover*, 210 Conn. 150, 154 (1989); *Buckman v. People Express, Inc.*, 205 Conn. 166, 171-72 (1987) (specifically holding that the trial court's instruction was not in error); *Foley v. Huntington Co.*, 42 Conn. App. 712, 727 n.6 (1996) (quoting instruction on the implied covenant

of good faith and fair dealing); *Feinberg v. Berglewicz*, 32 Conn. App. 857, 861 (1993); Conn. Gen. Stat. §§ 42a-1-203 (obligation of good faith), 42a-2-103(1)(b) (definition of good faith).

6.    Introduction to Damages

If you find that the defendant is liable to the plaintiff on the matters alleged in his complaint, then you must determine the amount of money to award to the plaintiff as contract damages. The following instructions tell you how to do that.

If you find that the defendant is not liable for any of the matters alleged in his complaint, then you do not need to consider the subject of damages. The fact that I am telling you about the law of contract damages does not mean that I believe that you will, or should, find against the defendant for the plaintiff.

7.    Plaintiff's Burden of Proof as to Amounts:

The plaintiff must prove by a preponderance of the evidence the amount of any damages to be awarded. The evidence must give you a sufficient basis to estimate the amount of damages to a reasonable certainty. Although damages may be based on reasonable and probable estimates, you may not award damages on the basis of guess, speculation or conjecture.

AUTHORITY

*Beverly Hills Concepts, Inc. v. Schatz & Schatz, Ribicoff & Kotkin*, 247 Conn. 48, 69 (1998); *West Haven Sound Development Corp. v. West Haven*, 207 Conn. 308, 317 (1988); *Bronson & Townsend Co. v. Battistoni*, 167 Conn. 321, 326-27 (1974); *Bertozzi v. McCarthy*, 164 Conn. 463, 468 (1973).

8.    Lost Profits:

Any damages you award on the second count of the plaintiff's complaint may include the plaintiff's lost profits. The plaintiff must prove that it is reasonably certain that the plaintiff would have earned those profits but for the defendant's breach. The plaintiff cannot recover for the mere possibility of

making a profit. In addition, the evidence must afford you a sufficient basis for estimating the amount of lost profits with reasonable certainty.

### AUTHORITY

*Beverly Hills Concepts, Inc. v. Schatz & Schatz, Ribicoff & Kotkin,* 247 Conn. 48, 68-78 (1998); *Robert S. Weiss & Associates, Inc. v. Wiederlight,* 208 Conn. 525, 541-43 (1988); *Stern & Co. v. International Harvester Co.,* 148 Conn. 527, 533-34 (1961); *Steeltech Building Products, Inc. v. Edward Sutt Associates, Inc.,* 18 Conn. App. 469, 472 (1989).


9.    The Counterclaim:


The defendant has asserted a Counterclaim against the plaintiff in this action. Georgia Gulf must, in order to cover the amount claimed to be due it, prove by a fair preponderance of the evidence that at the plaintiff's request it shipped the product listed in the invoices to the defendant, that he received it but failed to pay for the product which he received in accordance with the terms of the invoice.


10.    Course of Dealing:

The plaintiff claims the that strict terms of the contract between the

parties was modified by a "course of dealing" of the parties which allowed him

to pay for the product he received from Georgia Gulf according to a different

method of payment than that specified in the contract.

You are instructed that in order to have a modification of the written

contract terms both sides must have intended to and voluntarily agreed to

modify the terms of the written agreement.

Mere acceptance of the late payments does not amount to a modification of the written contract terms if Georgia Gulf did not intend such a modification to take place and supercede the terms of the contract.

The burden is on the plaintiff to prove by a preponderance of the evidence that both parties intended that the terms of the contract be modified by the subsequent course of dealing of the parties.